IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMANDA F.,[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

Civ. No. 2:22-cv-01937-MC

**OPINION AND ORDER**

_____

**MCSHANE, Judge**:

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

      Plaintiff applied for benefits on September 23, 2019, alleging disability as of June 23, 2017. Tr. 13.[2] Following a hearing, an Administrative Law Judge ("ALJ") determined Plaintiff was not disabled under the Act. Tr. 14–31. Plaintiff alleges that the ALJ erred in (1) determining Plaintiff's migraine headaches were not a severe impairment at step two; (2) rejecting Plaintiff's subjective symptom testimony; and (3) rejecting the medical opinion of Jared Hulme, NP-C, DNP. Because

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five–step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the

2 – OPINION AND ORDER

claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: fibromyalgia, mild carpal tunnel syndrome, anxiety disorder, depressive disorder, and post-traumatic stress disorder. Tr. 16. The ALJ then found Plaintiff had the RFC to perform the full range of light work with the following exceptions:

> she can only occasionally climb ladders, ropes, and scaffolds, and frequently climb ramps and stairs; she is limited to frequent handling and fingering and no forceful gripping (e.g., swinging a hammer, turning a lug wrench); she is limited to simple, routine tasks; and she can have no more than frequent interaction with the public.

Tr. 20.

**I.    Step Two**

Plaintiff argues the ALJ erred in determining her migraine headaches were non-severe at step two. Pl. Br. at 8. At step two, a claimant is not disabled if the claimant does not have any medically severe impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is not severe "when [the] medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have

3 – OPINION AND ORDER

no more than a minimal effect on an individual's ability to work." SSR 85-28, *available at* 1985 WL 56856, at *3. Even if an impairment is not severe, the ALJ must still consider its limiting effect when formulating the claimant's RFC. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

At step two, the ALJ found that Plaintiff had multiple severe impairments, but determined Plaintiff's migraine headaches were non-severe because she "sought only minimal treatment," had "no ongoing ER visits," and her symptoms were effectively managed with treatment. Tr. 16. The ALJ did not err in reaching this conclusion. Notably, although migraine diagnosis is carried throughout the record, migraine is rarely a presenting complaint at appointments. *See, e.g.*, tr. 440, 860, 865, 875. Plaintiff's records show minimal treatment for migraines consisting only of medication management. Moreover, Plaintiff generally responded well to treatment. For example, Plaintiff reported that her headaches "usually resolve" with a half-dose of medication and sleep. Tr. 786. In August 2020, Plaintiff was prescribed propranolol and Maxalt, after which Plaintiff had no further medical appointments in the record addressing migraines. Tr. 724. Finally, Plaintiff was able to work full-time for eight months in 2020, despite claims that her symptoms had steadily grown worse since 2017. Tr. 928, 48. Plaintiff thus failed to satisfy the burden of proof as to the severity of her migraines. Accordingly, the ALJ did not err in finding Plaintiff's migraines non-severe. However, even if the ALJ had erred as to migraines, such error would be harmless because the ALJ found that Plaintiff had other impairments that were severe and continued the disability analysis accordingly. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (failure to identify medically determinable impairment at step two was harmless because step two was decided in claimant's favor). The

4 – OPINION AND ORDER

ALJ was thus required to, and did, account for both severe and non-severe impairments, including Plaintiff's migraines, in the RFC.

## II.     Subjective Symptom Testimony

Plaintiff contends the ALJ erred in discounting her subjective statements about her limitations resulting from fibromyalgia. Pl. Br. at 11. To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the

5 – OPINION AND ORDER

claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013). In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Plaintiff testified that fibromyalgia causes whole body pain, and that "there's not a day that goes by" where she does not hurt. Tr. 45. She testified her pain level is "from a six to an eight" on regular days, and "from ten to up" on bad days. Tr. 46. According to Plaintiff, her pain is so bad that she cannot move and wants to do nothing "about 70 to 100 percent of the time." Tr. 46. Plaintiff stated her symptoms have been "just getting worse" since 2017, and that she had no periods of improvement. Tr. 48.

The ALJ determined Plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. Specifically, the ALJ found Plaintiff's symptom testimony was inconsistent with her activities of daily living, conservative treatment record, objective medical evidence. Additionally, the ALJ pointed to Plaintiff's sporadic work history as further support for his conclusions. Tr. 25.

Discussion of activities of daily living may support the decision to give less weight to symptom testimony in two ways: it may illustrate a contradiction with previous testimony or it may show that activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment."). Here, the ALJ found Plaintiff's "high-functioning activities of daily living" conflicted with her testimony of debilitating mental and physical symptoms. Tr. 24. The ALJ cited testimony that Plaintiff travels independently and engages in outdoor hobbies such as hunting, camping, and "being in the woods" and "creek." Tr. 24 (citing tr. 386). Further, the ALJ pointed to Plaintiff's July 2019 statement to her treating provider that she was "working under the table for extra funds and looks forward to being active each day." Tr. 24 (citing tr. 571). Finally, the ALJ noted Plaintiff had sustained full time work for eight months in 2020, after her alleged onset date (AOD), and had "work[ed] 6–7 days a week and 9 plus hours a day." Tr. 24 (citing tr. 928). These activities are inconsistent with Plaintiff's asserted limitations and are clear and convincing evidence. Accordingly, the ALJ did not err in relying on them to reject Plaintiff's symptom testimony. Plaintiff argues the ALJ failed to consider the "wax[ing] and wan[ing]" nature of fibromyalgia and relied only on those activities from "good days." Pl. Br. at 13. However, the ALJ's reliance on Plaintiff's eight-month period of sustained work despite her alleged debilitating symptoms can hardly be written off as merely a "good day." *E.g.*, tr. 48-49. Indeed, medical records show Plaintiff regularly went to the doctor, and received treatment for her waxing and waning symptoms throughout the eight-month period. *E.g.*, 879, 888, 889. As such, the ALJ properly

7 – OPINION AND ORDER

considered Plaintiff's fibromyalgia symptoms in the context of her daily activities and came to reasonable conclusion as to Plaintiff's claimed limitations.

Next, the ALJ noted Plaintiff received only routine and conservative treatment for her fibromyalgia. Tr. 23. "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). To support this conclusion, the ALJ first pointed to a gap in Plaintiff's neurology treatment records from November 2018 to January 2020, despite Plaintiff seeking treatment in November 2018 for "new, generalized whole body pain." Tr. 23 (citing tr. 707). The ALJ noted Plaintiff's fibromyalgia symptoms had been managed with medications and trigger point injections, and that Plaintiff had not seen a rheumatologist for treatment of her fibromyalgia. Tr. 23. The ALJ further cited Plaintiff's July 2020 statement to her treating provider that she was "overall doing well" regarding fibromyalgia and was able to maintain a twelve-hour workday. Tr. 23-24 (citing tr. 790). The ALJ's conclusion is reasonable and supported by substantial evidence. In March 2018, provider notes state Plaintiff had only taken one-third of the prescribed medication dose for fibromyalgia. Tr. 626. In April 2020, Plaintiff was prescribed baclofen, pamelor, and zonisamide for fibromyalgia symptoms, and reported to her provider in July 2020 that the medications were "working well." Tr. 790. In August 2020, Plaintiff reported that trigger point injections provided "significant relief of her symptoms." Tr. 721. Plaintiff declined physical therapy due to "work and time constraints" but told her treating provider she was "doing at home stretching and exercise routine[s]." Tr. 721. In April 2021, Plaintiff's treating provider described her fibromyalgia as "[w]ell managed" with her medications. Tr. 956. This evidence supports the ALJ's conclusion that Plaintiff's symptoms were not as limiting as she testified. *Parra*, 481 F.3d at 751.

8 – OPINION AND ORDER

The ALJ further noted Plaintiff's objective medical evidence showing "generally unremarkable" findings. Tr. 22. An ALJ may consider objective medical evidence when assessing a claimant's testimony and may discount a claimant's statements if medical opinion evidence contradicts the claimant's subjective testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.920(c)(2); *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, the ALJ thoroughly reviewed Plaintiff's medical records and reasonably concluded that the objective evidence did not support the severity of the alleged limitations. For example, Plaintiff had "tender points consistent with fibromyalgia" but she "almost always show[ed] only mild distress or 'no distress' and no other constitutional signs or symptoms." Tr. 22. Plaintiff's neurology exams in November 2018, January 2020, and August 2020, all show largely unremarkable findings. *See* tr. 698, 436, 709-10. An MRI of Plaintiff's lumbar spine in March 2018 showed only "mild facet changes at L4-5" but "no foraminal stenosis, excellent bone density, and good disk space preservation." Tr. 429. An October 2018 MRI of Plaintiff's cervical spine showed "no acute findings, with "minimal disc degenerative changes." Tr. 447. An April 2020 EMG nerve conduction study showed only "mild bilateral median nerve entrapment across the wrists" resulting in "no significant axon degeneration." Tr. 722. The ALJ did not err in the analysis of Plaintiff's objective medical evidence.

Finally, the ALJ pointed out that Plaintiff's work history had been "inconsistent" for years prior to her AOD. Tr. 25. A Plaintiff's "poor work history," may be upheld as a valid reason to discount testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Whitten v. Colvin*, 642 F. App'x 710, 712 (9th Cir. 2016) (claimant's poor work history suggested primary barrier to employment was motivation rather than disability). The ALJ noted Plaintiff had only "sporadic work" and no "sustained periods of substantial gainful activity-level

9 – OPINION AND ORDER

employment." Tr. 25 (citing tr. 290–92, 299–02). Thus, the ALJ concluded Plaintiff's ongoing unemployment was "likely something of longer standing than her current medical conditions. Tr. 25. Indeed, Plaintiff's work records extend back to 1995. These records reflect multiple years of years of no work, intermittent work, and years where work falls below what is required for SGA. Tr. 296–97. The ALJ properly relied on this evidence to discount Plaintiff's symptom testimony.

In sum, the ALJ did not err in discounting Plaintiff's symptom testimony because the ALJ provided "specific, clear and convincing reasons" for doing so. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273,1282 (9th Cir. 1996)).

### III.   Medical opinion evidence

Because Plaintiff filed her application after March 27, 2017, revised regulations regarding the evaluation of medical source opinions apply to her claim. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). The revised rules provide that the Social Security Administration will evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)-(5); *see Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "Supportability" and "consistency" are the most important factors to be considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,791-

92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). Additionally, "[t]he ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).

Treating physician DNP Jared Hulme provided an RFC evaluation as well as a headache questionnaire in support of Plaintiff's claim. Tr. 1009-11, 855-57. The ALJ considered both opinions, ultimately finding both to be unpersuasive. Tr. 28. The ALJ's conclusion is supported by substantial evidence. First, the ALJ noted DNP Hulme's RFC opinion was "conclusory" without "much in the way of supporting, clinical objective evidence for the limitations aside from listing claimant's diagnoses and reported symptoms." Tr. 28. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Thomas*, 278 F.3d at 957). For example, DNP Hulme assessed Plaintiff as "capable of sitting, standing, and walking for a combined total of less than eight hours." Tr. 1010. However, there is nothing in the record that explains or supports this limitation. As the ALJ pointed out, DNP Hulme's medical treatment notes "overwhelmingly document normal or minimally abnormal exams, including consistently normal constitutional findings, all of which do not support the degree of severe limitations opined." Tr. 28 (citing 744, 748, 758, 759, 764, 767,

11 – OPINION AND ORDER

771, 774, 778, 780, 785, 790). Similarly, Dr. Hulme's opinion that migraine headaches would cause Plaintiff to "miss work more than one day per week" is inconsistent with the record. Indeed, there is nothing in the record to support this limitation. As the ALJ points out, Plaintiff had sought no treatment for migraines since starting prophylactic medication in August 2020. Tr. 28, 892. Nor has Plaintiff required emergent treatment for migraines since that time. Tr. 855. Therefore, the ALJ properly rejected DNP Hulme's opinion because it was unsupported by and inconsistent with medical evidence in the record.

In sum, the ALJ acknowledged Plaintiff's impairments resulted in some functional limitations, but concluded she was not as limited as she claimed. In doing so, the ALJ provided a thorough summary of the record as a whole and supported his conclusions with substantial evidence.

.

## CONCLUSION

Because the ALJ's decision is free of legal error and supported by substantial evidence in the record, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 12th day of March, 2024.

    /s/Michael McShane
Michael J. McShane
United States District Judge

12 – OPINION AND ORDER